```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK          07 CRIM.    277
- - - - - - - - - - - - - - - - - -x
                                    :
UNITED STATES OF AMERICA            :
                                    :          INFORMATION
         - v. -      JUDGE KRAM     :
                                    :
EVAN TANNOR,                        :          07 Cr.
                                    :
              Defendant.            :
                                    :
- - - - - - - - - - - - - - - - - -x
```

[Stamp: USDC SDNY / DOCUMENT / ELECTRONICALLY FILED / DOC #: ____ / DATE FILED: 4/10/07]

The United States Attorney charges:

Background

At all times relevant to this Indictment, unless otherwise specified:

1.  Local 3 ("Local 3" or the "Local") of the International Brotherhood of Electrical Workers (the "IBEW") was a local affiliate of the IBEW based in New York City. Local 3 represented over 30,000 members, who were employed, for the most part, in various sectors of the electrical industry. Under the IBEW Constitution and the Local's Bylaws, the Business Manager of Local 3 was the principal officer of the Local and was authorized to appoint other individuals, some of whom were designated as Business Representatives, to help operate the Local's affairs.

2.  In accordance with its Bylaws, Local 3 was divided into various Units, which were often referred to as "divisions." The different divisions within Local 3 handled different types of work within the Local's jurisdiction. The Local 3 Bylaws also provided for the designation of Unit officers, who were

responsible for conducting the affairs of the divisions. Local 3 Business Representatives also helped to conduct and oversee the activities of particular Local 3 divisions.

3. Union members within the J Division (the "J Division" or the "Division") of Local 3 performed work relating to the installation and maintenance of street lights and traffic signals throughout New York City. The affairs of the J Division were overseen by a Local 3 Business Representative assigned to the Division, and by a group of officers who were appointed by the Business Representative to their official positions within the Unit. Representatives of the J Division negotiated and administered collective bargaining agreements with employers; such agreements, which were executed by the Business Representative for the J Division and, in recent years, by the Business Manager of Local 3, governed the terms and conditions of employment for Local 3 members assigned to J Division jobs.

4. Local 3 was a "labor organization," as that term is defined in Title 29, United States Code, Sections 142(3), 152(5), and 402(i) and (j).

5. Companies that employed J Division members ("Street Lighting Contractors") entered into contracts with the City of New York (the "City") and other public authorities to perform work involving, among other things, the maintenance and installation of street lights and traffic signals on streets and

2

roadways, including interstate highways, as well as in other public spaces, throughout the City. The New York City Department of Transportation administered such contracts for the City.

      6.    S.N. Tannor, Inc. ("S.N. Tannor") was a Street Lighting Contractor that employed J Division members to perform work for the City. EVAN TANNOR, the defendant, held an executive and managerial position at S.N. Tannor, and, in that capacity, acted in the interests of the company.

      7.    From in or about 1990 until in or about July of 2006, Brian McLaughlin served as the Local 3 Business Representative for the J Division. In that capacity, McLaughlin was an employee of Local 3, and he functioned as the highest ranking official of the J Division. Among other responsibilities, McLaughlin oversaw the internal operations of the Division; he represented the Division and its members in dealings with employers; he helped to negotiate and execute collective bargaining agreements; and he exercised substantial authority over the assignment of J Division members to employers, including the selection of certain union members to hold supervisory positions.

      8.    From at least as early as 1995 until in or about January of 2006, when he retired from active employment and union membership, an individual referred to in this Information as "the Officer" served as the Treasurer and then as the Secretary of the

J Division.  Moreover, from in or about 1998 until in or about 2002, the Officer held a full-time position as the General Foreman for street lighting work at S.N. Tannor.  As the General Foreman, the Officer was responsible for overseeing and supervising other J Division members who were employed at S.N. Tannor to perform work on street lighting projects.

<u>COUNT ONE</u>

9.  Between in or about 1998 and in or about 2002, in the Southern District of New York and elsewhere, EVAN TANNOR, the defendant, being an employer and a person who acted in the interest of an employer, unlawfully, willfully, and knowingly, did pay, lend, and deliver, and did agree to pay, lend, and deliver, money and other things of value to representatives of employees who were employed in an industry affecting commerce, and to an officer and an employee of a labor organization which represented, sought to represent, and would admit to membership such employees, to wit, TANNOR provided checks totaling more than $350,000 to the Officer, who, as TANNOR understood, received those payments as an intermediary for Brian McLaughlin, who was the ultimate and intended beneficiary of the payments.

(Title 29, United States Code, Sections 186(a)(1), (a)(2), and (d)(2), and Title 18, United States Code, Section 2.)

*Michael Garcia*
MICHAEL J. GARCIA
United States Attorney

4

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v -

### EVAN TANNOR,

Defendant.

### INFORMATION

07 Cr.

Title 29, United States Code, Section 186(a);
Title 18, United States Code, Section 2.

MICHAEL J. GARCIA
United States Attorney.